IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

RICKY VINCENT PENDLETON,

        Plaintiff

v.                                 Case No. 2:21-cv-00249

DONNIE AMES, Superintendent, *et al.*,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion to Dismiss filed by Donnie Ames (hereinafter "Defendant") [ECF No. 29].[1] By Standing Order, this matter is referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons appearing to the Court, it is hereby **ORDERED** that the referral of this motion to the Magistrate Judge is **WITHDRAWN.**

## I.    The Plaintiff's Allegations and Defendant's Motion to Dismiss

Plaintiff is an inmate at the Mount Olive Correctional Complex ("MOCC") in Mount Olive, West Virginia. He presently has two cases pending before this Court and previously filed two other unsuccessful civil actions herein pertaining to his conditions of confinement at MOCC. *See Pendleton v. Hinte*, Case No. 2:15-cv-01903 (S.D. W. Va., Mar. 27, 2019) and *Pendleton v. Ballard*, No. 2:16-cv-05389 (S.D. W.Va. Feb. 6, 2017).

---

[1] The remaining defendants have not been properly served with process and have not made an appearance herein.

Plaintiff filed the instant complaint [ECF No. 1] on April 19, 2021, alleging violations of his rights under the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*, arising out of the prohibition and confiscation of his "I-Bible," a handheld electronic device that reads Bible verses.  Plaintiff seeks injunctive relief in the form of the return of his I-Bible.  [*Id.* at 5].  Although there are few facts in the threadbare complaint itself, Plaintiff also filed a motion for preliminary injunction containing greater details concerning his claims, which he incorporates by reference in his complaint.  [ECF No. 1 at 5; ECF No. 2].

On August 9, 2019, Plaintiff purchased an I-Bible, which was apparently sanctioned by prison policy at that time.  [ECF No. 1 at 4; ECF No. 2, Ex. B]. However, on May 11, 2020, Deputy Superintendent Jason Collins ("Collins"), issued an Inmate Memorandum concerning the use of I-Bibles, which stated: "Effective immediately!! Due to recent security concerns, I-Bibles will no longer be permitted. If you are in need of help in reading or accessing a bible you may contact someone within your unit team and they will assist you."  [ECF No. 30 at 2; ECF No. 2, Ex. E]. According to Defendant's memorandum of law in support of his motion to dismiss, "I-Bibles were no longer permitted within the inmate population for purchase or possession [] because it was discovered that the inmates were using the I-Bible charging cables to charge cellular phones which are prohibited devices within the prison because they pose a significant security risk for the facility, its staff, and for the inmates themselves."  [ECF No. 30 at 2].

2

On August 18, 2020, Plaintiff was taken to segregation for a prison rule violation and his I-Bible, among other personal property in his cell, was seized because no property is permitted to remain in a prisoner's cell during that time. [ECF No. 1 at 2-4; ECF No. 2 at 2; ECF No. 30 at 3]. According to Defendant, at the time of Plaintiff's lock-up, MOCC's Operational Procedure 403: Inmate Property and State Shop Procedures ("OP 403") controlled the storage and disposition of inmate property. [ECF No. 30 at 2-3 and Ex. 1]. When an inmate is moved from their cell for lock-up, "all property located within the cell will be searched, inventoried, and stored within the State Shop Property Room either as short-term or long-term storage as applicable." [*Id.*] OP 403 defines short-term storage as storage periods of thirty (30) calendar days or less. [*Id.* at 1]. During the search of an inmate's cell, an Evidence/Property Seizure Receipt is to be completed for any non-allowed property that is found and confiscated. [*Id.* at 5]. A copy of the Evidence/Property Seizure Receipt is given to the inmate and the inmate is then advised that he will have thirty (30) days during which he is to arrange for the final disposition of property. [*Id.*] Any non-allowable property that is recorded and seized pursuant to this process must be either mailed out of the facility or it will be destroyed. [*Id.* at 6].

In accordance with OP 403, Plaintiff was allegedly provided an Evidence/Property Seizure Receipt, dated August 21, 2020, documenting that his I-Bible had been seized as non-allowable property. [ECF No. 30 at 3 and Ex. 2]. A total of five items were listed on Plaintiff's Seizure Receipt, including the I-Bible. [*Id.*] On two of the listed property items (homemade ear warmers and poster), Plaintiff

3

advised the State Shop that he wanted the property destroyed, and on another item (arts and crafts blanket) Plaintiff indicated that he wanted the property mailed to an outside address. [*Id.*]  With respect to his I-Bible, Plaintiff wrote the following: "*grandfathered – There is no memo produced by Teresa Gregory (over inmate property) nor Superintendent Ames to say that inmates who purchased I-Bibles to send them home even if they go to lock-up!" [*Id.*]  Consequently, according to Defendant, since Plaintiff did not elect to mail his I-Bible out of the prison, it was ultimately destroyed pursuant to OP 403.

According to the complaint, on September 23, 2020, Plaintiff was released from segregation and subsequently discovered that his I-Bible was not included in his property. [ECF No. 1 at 4; ECF No. 2 at 2; ECF No. 30 at 4].  Plaintiff alleges that, after receiving no answer about his I-Bible from unit staff, he spoke to Inmate Service Manager Deborah Aide ("Aide") and Associate Superintendent of Programs John Bess ("Bess"), both of whom informed him that that there was a memorandum issued which stated that, "if [an] inmate[] goes to lock-up, "[their] I-Bible will be confiscated." [ECF No. 1 at 5; ECF No. 2 at 2].  Plaintiff further alleges, however, that Aide and Bess "failed to produce the memorandum." [*Id.*]  Plaintiff further alleges that no such memorandum exists. [ECF No. 1 at 5].

Thus, on November 9, 2020, Plaintiff filed an administrative grievance asserting that his I-Bible had been "unlawfully seized" and that his "First Amendment right to practice a religion" was being violated. [ECF No. 1 at 5; ECF No. 2, Ex. C].  The grievance was accepted by the Unit Manager/Director of Inmate

4

Services who provided the following response to Plaintiff: "The I-Bible was taken out facility wide. You can still have access to religious material from the chapel." [*Id.*]. Plaintiff then appealed this response to the Superintendent who rejected the grievance as untimely. [*Id.*] Plaintiff subsequently appealed the rejection to the Commissioner, who affirmed the Superintendent's rejection of the grievance as being untimely filed. [*Id.*] Then, on April 21, 2021, Plaintiff filed the instant complaint [ECF No. 1] and a motion for a preliminary injunction [ECF No. 2], which was denied by the Court on January 25, 2022 [ECF No. 17].

On April 14, 2022, Defendant filed the instant motion to dismiss [ECF No. 29] and memorandum of law in support thereof [ECF No. 30] asserting that Plaintiff failed to properly exhaust the available administrative remedies before filing his complaint and that the complaint fails to state a plausible claim for relief under either the First Amendment or RLUIPA. Specifically, Defendant contends that the only relevant grievance Plaintiff submitted before he filed his complaint was deemed untimely and, thus, did not exhaust his administrative remedies. [ECF No. 30 at 6-9]. Defendant also asserts that Plaintiff has not pled sufficient facts to establish that the denial of his I-Bible places a substantial burden on his religious exercise. [*Id.* at 14-15]. He further asserts that, even if Plaintiff could meet the substantial burden element, the prohibition of the I-Bible is the least restrictive means of furthering the prison's compelling interest in protecting the security of the facility and is reasonably related thereto. [*Id.* at 15].

On May 4, 2022, Plaintiff responded to Defendants' motion to dismiss. [ECF Nos. 32 and 33]. As further addressed *infra*, Plaintiff's response asserts that his religious exercise is substantially burdened because he cannot use his I-Bible to hear the word of God and to further his religious education. [ECF No. 32 at 3-7]. He also contends that the prison's prohibition and confiscation of his I-Bible, while others still possess theirs, is an "exaggerated response" that is arbitrary and capricious and is not the least restrictive means of accomplishing Defendant's stated security goals. [*Id.*] Plaintiff also raises a new *ex post facto* claim in his response. [*Id.* at 2, 5]. Defendant did not file a reply brief. The motion to dismiss is fully briefed and ripe for resolution.

## II.     Standard of Review

Defendant's motion is filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When "faced with a Rule 12(b)(6) motion to dismiss . . . courts must . . . accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

6

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. *Pro se* complaints, such as this, are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, liberal construction does not mean that the court can ignore a clear failure to allege facts setting forth a cognizable claim for relief. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

## III. Discussion

### A. Failure to exhaust administrative remedies.

Defendant's motion to dismiss first asserts that Plaintiff failed to exhaust the available administrative remedies concerning his claims before filing his complaint. [ECF No. 30 at 6-9]. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), was enacted "to address concerns about the 'ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (quoting *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some rather substantial limitations on a prisoner's ability to initiate

a civil action." *Id.* One such limitation is the requirement that prisoners exhaust administrative remedies within the prison before filing a civil action." *Id.*

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative procedures. *Id.* at 741. In *Booth*, the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action. *Id.*

"Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)).

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)).  Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c).  The WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life . . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

W. Va. Code § 25-1A-2(d).

West Virginia Division of Corrections and Rehabilitation ("WVDCR") Policy Directive 335.00, which governs the Inmate Grievance Procedures at MOCC, and which has been made a part of the record herein,[2] defines "exhaustion as follows:

> Submitting an accepted grievance and properly appealing an accepted grievance fully and receiving a final response thereto by the

---

[2] Defendant filed a copy of the version of Policy Directive 335.00 that was in effect at the time of the subject incidents.  [ECF No. 29, Ex. 3].  If the Court relies on materials outside of the pleadings, the court may treat a motion to dismiss as one for summary judgment pursuant to Rule 56.  *See Jeffers v. Wal-Mart Stores, Inc.*, 84 F. Supp.2d 775, 777 (S.D. W. Va. 2000).  However, as explained *infra*, the Court will not consider evidence outside of the complaint herein.

Commissioner.  <u>Rejections do not constitute exhaustion</u>.  Remands are
not final responses unless expressly stated in the decision.

[ECF No. 29, Ex. 3 at 2, Definitions) (emphasis added).  The Policy Directive

defines "reject" as "refusal to review a grievance on the merits due to a failure of the

inmate to follow procedural requirements for filing such grievance." [*Id.*] The Policy

Directive further provides that "[a]ny inmate who fails to fully and properly comply

with the provisions set forth in this Policy Directive shall not be considered to have

taken full advantage of administrative remedies afforded him/her and therefor has

not exhausted administrative remedies." [*Id.* at 2, § I(D)].

While "failure to exhaust available administrative remedies is an affirmative

defense," it is a threshold issue that generally should be resolved before reaching the

merits of the underlying claims for relief.  *Jones*, 549 U.S. at 216; *Moore v. Bennette*,

517 F.3d 717, 725 (4th Cir. 2008).   If a plaintiff fails to exhaust his or her

administrative remedies under the PLRA or WVPLRA, then the defendant is entitled

to judgment as a matter of law. *See Legg*, No. 2:16-cv-01371, 2017 WL 72604, at *2.

Whether an administrative remedy has been exhausted for purposes of the PLRA "is

a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648,

2017 WL 4004579, at *3 (S.D. W. Va. 2017) (citing *Drippe v. Tobelinski*, 604 F.3d 778,

782 (3d Cir. 2010)).

In the instant matter, Defendant's memorandum of law asserts:

Plaintiff alleges that he has exhausted his administrative remedies
through the filing of a grievance [ECF Nos. 1, at 5; 2, Exhibit C],
however, Plaintiff appears to have misunderstood the requirements
necessary to exhaust a grievance pursuant to PD 335.00, which governs
grievance procedures for all facilities operating within the WVDCR,

> including MOCC, where Plaintiff is housed. Plaintiff has simply not
> exhausted his administrative remedies through the grievance
> process available to him because his grievance was rejected by the
> Superintendent for being filed untimely. [ECF No. 2, Exhibit C].

[ECF No. 30 at 8]. Specifically, Defendant asserts that Plaintiff was released from segregation on September 23, 2020 and then discovered that his I-Bible was not in his personal property that was being stored in the State Shop. [*Id.*; *see also* ECF No. 1 at 4]. Defendant further asserts that Plaintiff did not file Grievance No. 20-MOCC-ST-349 concerning this matter until November 9, 2020, well after the 15 days permitted for filing a grievance under Policy Directive 335.00. [*Id.*] Defendant further contends that Plaintiff was aware that his I-Bible was being seized as non-allowable property as early as August 21, 2020, when he was allegedly provided a property seizure receipt. [*Id.* at 8; ECF No. 29, Ex. 2]. Noting that Plaintiff's grievance was subsequently rejected by Defendant Ames as untimely, and that Plaintiff then appealed the rejection, which was upheld by the Commissioner, Defendant Ames correctly asserts that this grievance did not properly exhaust his administrative remedies in accordance with Policy Directive 335.00. [ECF No. 30 at 9].

Plaintiff's response to the motion to dismiss, however, asserts that, when he was released from segregation, his personal property was not immediately returned to him due to Covid lockdowns. [ECF No. 32 at 8-9]. Thus, he contends that he was not aware that his I-Bible was not in his property until on or about November 9, 2020, and then he filed the respective grievance. [*Id.* at 7, 9]. Based upon these contentions, Plaintiff further asserts that his grievance was improperly rejected. [*Id.*] He also

contends that he did not receive a property inventory sheet from the State Shop and did not learn that his I-Bible had been destroyed, without notice, until February 14, 2022 (nearly a year after he filed the complaint herein), and he thereafter filed several other grievances concerning that conduct.  [*Id.* at 8-9].  Accordingly, Plaintiff asserts that Defendants failed to comply with OP 403 and are not being "forthcoming" about their own conduct.  He further claims that the rejection of his November 9, 2020 grievance is "null and void."  [*Id.* at 9-10].

Plaintiff's November 9, 2020 grievance was rejected and, therefore, could not have properly exhausted his administrative remedies concerning his RLUIPA and First Amendment claims.  However, there are other issues of fact that would require further development and currently prohibit this Court from ruling as a matter of law on the exhaustion issue.  This matter is before the Court on a motion to dismiss and the Court declines to consider the additional exhibits provided by the parties that are not integral to the complaint and would require the Court to convert Defendant's motion to a motion for summary judgment for consideration.[3]  Accordingly, I **FIND** that Defendant's motion to dismiss for failure to exhaust administrative remedies should be **DENIED.**

### B. Plaintiff has not demonstrated a substantial burden on the exercise of his religious beliefs.

Defendant's motion to dismiss further asserts that Plaintiff cannot meet his initial burden to prove that denial of his I-Bible "substantially burdens" the exercise

---

[3]  Moreover, the *pro se* Plaintiff was not advised of the requirements for opposing summary judgment in accordance with the Fourth Circuit's decision in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

of his religion and, thus, Defendant contends that Plaintiff's complaint fails to state a plausible claim under either RLUIPA or the First Amendment Free Exercise Clause.  Because the standard under RLUIPA is more stringent than that under the First Amendment, the undersigned will first address Plaintiff's RLUIPA claim.

RLUIPA claim

Section 3 of RLUIPA governs restrictions on an institutionalized person's religious exercise by state or local governments.  RLUIPA provides as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  The Act defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  A substantial burden "'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs,' or . . . forces a person to 'choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand.'"  *Smith v. Ozmint*, 578 F.3d 246, 251 (4th Cir. 2009) (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)).  Quoting from *Lovelace*, the *Smith* decision noted that courts may "not judge the significance of the particular belief or practice in question."  *Lovelace,* 472 F.3d at 187 n.2.  *Id.*  The Supreme Court has described RLUIPA as an "expansive protection for religious liberty" and noted that

13

"Congress mandated that this concept 'shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution.'" *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (citing § 2000cc-3(g)).

Plaintiff bears the initial burden of proving that Defendants' actions substantially burden his sincere religious exercise. *Id.* at 360. If Plaintiff satisfies this requirement, then Defendant must demonstrate that such substantial burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering such interest. *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 99-100 (4th Cir. 2013); *see also Goodall by Goodall v. Stafford Cnty. Sch. Bd.*, 60 F.3d 168, 171 (4th Cir. 1995) ("[I]f the plaintiff cannot show that their exercise of religion is substantially burdened by the [government's] policy, the [government] is not required to come forward with proof of its interest.")

In the instant complaint, Plaintiff does not identify any particular religious faith he observes. His memorandum in support of his preliminary injunction motion, which is incorporated by reference in his complaint, cites to a single verse of scripture and merely claims that he must "hear the word of God;" thus, he alleges that he needs his I-Bible to play audio recordings of Bible verses. [ECF No. 2 at 1]. Plaintiff also claims that, as part of his educational studies to obtain an Associate's Degree from the International Christian College and Seminary, he is enrolled in a correspondence course and needs the I-Bible to complete his course work. He further claims that he has fallen behind in his coursework. [*Id.* at 4]. He also summarily contends that he

14

has vision issues or potential dyslexia, so the I-Bible makes it easier for him to complete his studies.  [*Id.* at 7].

As noted by Defendant's motion, however, "[n]o substantial burden occurs if the government action merely makes the 'religious exercise more expensive or difficult' or inconvenient, but does not pressure the adherent to violate [his] religious beliefs or abandon one of the precepts of [his] religion." *Rountree v. Clarke*, No. 7:11-cv-00572, 2015 WL 1021286, at *7 (W.D. Va. Mar. 9, 2015) (quoting *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007)); *see also Baines v. Hicks,* No. 3:14CV616, 2016 WL 7380558, at *10 (E.D. Va. Dec. 20, 2016) (quoting *Smith*, 502 F.3d at 1278) ("[A]t a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice."); *Sullivan v. Younce,* No. 3:15-cv-10, 2017 WL 655175, at *9 (E.D. Va. Feb. 16, 2017) (holding that removal of purported religious materials from inmate's cell was an inconvenience, not a substantial burden on his exercise of religion).  Defendant's motion asserts that Plaintiff's course work is done through written correspondence and further contends that the I-Bible is not necessary to complete the required work.  [ECF No. 30 at 14]. Defendant emphasizes Plaintiff's own words, stating that the I-Bible "would be *helpful* while conducting his studies."  [*Id.*, citing ECF No. 2 at 5-6] (emphasis added). Thus, Defendant asserts that denial of an I-Bible is, at most, an inconvenience to Plaintiff.  Accordingly, Defendant contends that "Plaintiff has failed to show that the lack of access to an I-Bible has substantially burdened the exercise of his religion as

it relates to his ability to participate in the correspondence course and learn more about his faith." [*Id.* at 14-15].

Defendant further asserts that Plaintiff has not established facts to demonstrate that he has been required to modify his behavior or violate his beliefs. [*Id.* at 15]. He contends that Plaintiff was not even approved for the correspondence course until December of 2020, well after the alleged policy prohibiting I-Bibles had been implemented and after Plaintiff's I-Bible had been seized. [*Id.*] Defendant further asserts that Plaintiff has access to Bibles at the prison, including large print Bibles to assist with his vision issues. [*Id.*] Defendant further notes that Plaintiff did not even mention his vision issues in his grievance. [*Id.*]

Plaintiff's response to the motion to dismiss asserts that the "unlawful confiscation" of his I-Bible does deprive him free exercise of seriously held religious beliefs and substantially burdens the practice of his religion and furtherance of his religious education. [ECF No. 32 at 1]. Plaintiff contends that the substantial burden on his religious exercise stems from not being able to use the I-Bible for religious educational purposes and to hear the word of God, especially considering the lack of in-person religious services due to the Covid-19 pandemic. [*Id.* at 3]. As a result, he claims that he is being forced or pressured to abandon his religious educational pursuits because he cannot use the "course-required" version of the Bible (the New International Version 2nd Edition (revised)) which, he claims, is available on the I-Bible and "gives detailed events for each verse." He further claims that a hard copy of this version of the Bible is not available at the prison. [*Id.* at 4]. Plaintiff further

16

contends that he initially received coursework for his degree program in May of 2019, prior to being authorized to purchase an I-Bible.  [*Id.* at 5].

Plaintiff's response further argues that Defendant's alleged prohibition of I-Bibles and the confiscation of his I-Bible is an "exaggerated response" that is not rationally related to prison security because he was never charged with possession of a cell phone or misuse of an I-Bible charger, and there are other prisoners at MOCC who still possess an I-Bible.[4]  [*Id.* at 1,3, 5-6].  Thus, he argues that Defendant's reliance on an alleged security threat to disallow I-Bibles is arbitrary and capricious. [*Id.*]  Plaintiff's response also adds an entirely new *ex post facto* claim stemming from the change in prison policy concerning I-Bibles.[5]  [*Id.* at 2, 5].

Plaintiff further claims that there are less restrictive means to accomplish Defendant's alleged security measures.  Specifically, Plaintiff contends that prison staff, whom he claims to be the ones bringing illegal cell phones into the prison, should be searched upon entry.  Alternatively, Plaintiff suggests that I-Bible chargers could be maintained by staff in a central location where I-Bibles could be brought to be charged.  Plaintiff further notes that prisoners in general population have access to other electronic tablets for various uses that have similar chargers and those have

---

[4] To the extent Plaintiff may be attempting to add an equal protection claim on this basis, he cannot do so through a response to a motion.  "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. Sept. 11, 2006) (citing *United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006)).

[5] Even if this claim were properly before the Court, it fails as a matter of law because a change in prison policy concerning the possession of personal property is not a retroactive change that increases punishment.  *See Jones v. Murray*, 962 F.2d 302, 309-10 (4th Cir. 1992) (matters relating to prison management that do not extend an inmate's sentence do not violate the prohibition on *ex post facto* laws).

not been seized or outlawed.  [*Id.* at 2-7].  Plaintiff also contends that the fact that other prisoners still have I-Bibles demonstrates that the alleged security threat is "no real security concern."  [*Id.* at 5].  He identifies specific prisoners who allegedly still possess an I-Bible and states that there are more prisoners who also have I-Bibles but are unwilling to be identified for fear of reprisal.  [*Id.* at 6].

This Court need go no further than finding that Plaintiff has failed to plead sufficient facts to establish a substantial burden on his religious exercise.  While neither the Supreme Court nor the Fourth Circuit has specifically addressed whether the pursuit of religious education is a "religious activity," given RLUIPA's broad construction, I will assume that Plaintiff's religious studies constitute a sincere religious exercise for the purpose of his RLUIPA and First Amendment claims.  *See Whitehouse v. Johnson*, No. 1:10-cv-1175, 2011 WL 5843622, at *3 (E.D. Va. Nov. 18, 2011).  Nonetheless, Plaintiff's allegations concerning the denial of possession and use of his I-Bible simply does not rise to the level of a substantial burden placed on the exercise of his religious beliefs.

As noted above, a substantial burden must be more than an inconvenience to a religious exercise.  Several courts within our Circuit have concluded that similar deprivations of Bibles or other religious materials do not rise to the level of a substantial burden.  *See, e.g., Nance v. Seabolt*, No. 1:22-cv-20, 2023 WL 2307090, at *4 (M.D.N.C. Mar. 1, 2023) (allowance of one Bible and denial of a particular NIV Study Bible was not a substantial burden on religious practice); *Boughton v. Geo Group, Inc.*, No. 1:20-cv-938, 2023 WL 1970365, at *8 (E.D. Va. Feb. 10, 2023)

(RLUIPA does not require prisons to provide inmates with religious advisors or study methods of choice); *Fuller v. Hunneycutt*, No. 1:21-cv-00258, 2022 WL 4099462, at *3 (W.D.N.C. Sept. 7, 2022) (lack of Bible and "other prayer and study literature" for 22 days did not plausibly state substantial burden to support First Amendment or RLUIPA violation); *Shabazz v. Va. Dep't of Corr.*, No. 3:10-cv-638, 2013 WL 1098102, at *8 (E.D. Va. Mar. 15, 2013) (the failure to provide a preferred method or "every tangential item of property that could aid an inmate's religious exercise or learning" does not constitute a substantial burden); *see also Coleman v. Governor of Mich.*, 413 F. App'x 866, 875-76 (6th Cir. 2011) (policies limiting inmate access to religious radio or television broadcasts failed to substantially burden inmates' religious exercise where alternative literature and avenues of discussion were available); *Van Wycke v. Reisch*, 581 F.3d 639, 656-57 (8th Cir. 2009) (denial of group study time did not impose substantial burden on inmate's religious exercise).

Like these cases, Plaintiff's allegations concerning the disallowance and confiscation of his I-Bible amounts to nothing more than an inconvenience to his religious exercise and fails to establish a substantial burden thereon. *See Sullivan, supra*, 2017 WL 655175, at *9 (removal of suspected gang materials, including religious reading materials, from prisoner's cell did not place substantial burden on his religious exercise and amounted, at most, to an inconvenience thereto). Moreover, Plaintiff has not sufficiently alleged that he is without adequate alternative methods to complete his religious studies and hear the word of God. Thus, for the reasons stated herein, I **FIND** that Plaintiff has not established that denial of his I-Bible poses

a substantial burden on the exercise of his religious beliefs and, therefore, his complaint fails to state a plausible claim for relief under RLUIPA.[6]

First Amendment claim

Under the Free Exercise Clause of the First Amendment to the United States Constitution, made applicable to the states under the Fourteenth Amendment, a prisoner's right to practice his or her religion may only be restricted upon the showing that such restriction is reasonably related to a legitimate penological interest. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987); *Turner v. Safley*, 482 U.S. 78, 84 (1987). "This approach ensures the ability of corrections officers 'to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration' [citation omitted] and avoids unnecessary intrusion of the judiciary into problems particularly ill-suited to 'resolution by decree.'" *O'Lone*, 482 at 349-350 (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)). Thus, federal courts are counseled to exercise judicial restraint in matters of prison administration. *Turner*, 482 U.S. at 89. Accordingly, a First Amendment claim like the one here turns on the reasonableness of the restriction and allows the court to consider whether there are ready alternatives to accommodate the prisoner's religious rights. *Id.* at 90-91.

However, like the RLUIPA analysis, before applying this rational basis test, the Court must first determine that the Plaintiff "(1) holds a sincere religious belief and (2) that his religious practice has been substantially burdened by the prison

---

[6]  Because I have found that Plaintiff failed to satisfy the substantial burden element, I need not address the compelling interest and least restrictive means elements herein.

policy or practice." *Firewalker-Fields v. Lee*, 58 F.4th 104, 114 (4th Cir. 2023) (citing *Greenhill v. Clarke*, 944 F.3d 243, 253 (4th Cir. 2019)).   When a plaintiff fails to demonstrate a substantial burden on the exercise of his religious beliefs under the strict scrutiny required by RLUIPA, such a claim also fails under the Free Exercise Clause of the First Amendment. *See Blake v. Rubenstein*, No. 2:08-cv-00906, 2016 WL 5660355, at *26 (Apr. 4, 2016) (citing *Shabazz v. Johnson*, No. 3:12-cv-282, 2015 WL 4068590 (E.D. Va. July 2, 2015) ("[w]here an inmate has not put forth sufficient evidence under RLUIPA to demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well.") (other citations omitted).   Thus, in accordance with the above findings concerning the failure of Plaintiff's RLUIPA claim, I further **FIND** that his First Amendment Free Exercise Clause claim concerning denial of his I-Bible also fails to state a plausible claim for relief and should be dismissed.

## C.   Dismissal of claims against other defendants under § 1915A.

Even where service of process has not been accomplished, pursuant to the provisions of 28 U.S.C. § 1915A, the court is obliged to screen a case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss a claim if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.  As noted previously, despite attempts to do so, Defendants Collins, Bess, and Aide have not been properly served with process and have not appeared herein.  Nonetheless, because Plaintiff's

complaint fails to state a plausible claim for relief under either RLUIPA or the First Amendment, I **FIND** that dismissal of the claims against these Defendants for failure to state a claim is appropriate under 28 U.S.C. § 1915A.

## IV.   Conclusion

For the reasons stated herein, it is hereby **ORDERED** that Defendant Ames' Motion to Dismiss [ECF No. 29] is **GRANTED in part** and **DENIED in part** and the claims against Defendant Ames are **DISMISSED**, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.  It is further **ORDERED** that the claims against Defendants Collins, Bess, and Aide are **DISMISSED**, pursuant to 28 U.S.C. § 1915A, for failure to state a claim upon which relief can be granted.  A judgment order dismissing this matter in its entirety will be separately entered.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:      March 16, 2023

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE